IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

Andrew Duke,
       Plaintiff                                Civil No. 2:08-CV-1055-SU

v.                                          OPINION AND ORDER

F.M.K. Construction Services, Inc.
  A California Corporation,
HorizonWind Energy, LLC,
Arlington Wind Power Project, LLC,
  A Delaware Limited Liability Company,
        Defendants.

Sullivan, Magistrate Judge

      Plaintiff Andrew Duke ("Duke") brought this diversity action pursuant to 28 U.S.C. §

1332 against defendants F.M.K Construction Services ("FMK"), Horizon Wind Energy, and

Page 1 - OPINION AND ORDER

Arlington Wind Power Project, a subsidiary of Horizon Wind Energy ("Horizon").[1]  Plaintiff

alleges employment discrimination under ORS 659A.040 and ORS 659A.030 against all

defendants and interference with employment relationship against defendants Horizon.

Defendants filed this motion for summary judgment arguing that Plaintiff failed to provide

evidence sufficient to create a genuine factual dispute that his termination of employment

occurred because of his workers' compensation claim.  For the reasons stated below, Horizon

motion is granted, in part, and denied, in part, and FMK's motion is granted, in part, and denied,

in part.[2]

FACTUAL BACKGROUND

A. UNDISPUTED FACTS.

The following facts are not in dispute.  FMK and Horizon were parties to a contract

regarding the Rattlesnake Road Wind Farm ("Rattlesnake Road").  Dec. of Don Bush, Ex. 1.[3]

FMK contracted with Horizon to construct wind turbine foundations on Rattlesnake Road. *Id.*  A

provision of the contract reserved Horizon's right to "remove or replace" personnel on site. *Id.*[4]

---

[1] Arlington is a project company of Horizon.  Arlington has no employees. Decl. Ken
Ripper.

[2] The parties have consented to jurisdiction over this matter by the magistrate judge
pursuant to 28 U.S.C. § 636(c).

[3] Citations to declarations and depositions are identified by the last name of the declarant
or deponent, and citations are to the page of the declaration or page(s) of the deposition
transcript.

[4] Foundation Balance of Plant Procurement and Construction Contract, Article 4, General
Duties and Obligations of Contractor, 4 .3 "... If Contractor desires to remove or replace one or
more of the persons ... Contractor shall first discuss any such proposed removal or replacement
with Owner and any such replacement personnel shall be subject to the prior written approval of
Owner, which approval shall not be unreasonably withheld.  Contractor shall administer and

FMK employed Duke as a foreman on Rattlesnake Road. *Id.* Duke supervised approximately thirty construction workers. Duke Dep. 22:24-23:22. FMK supplied a truck for Duke. Decl. of Don Bush, Duke Dep. 46:1-9. Duke received daily work instruction from either FMK employees Don Bush, Kevin Logsdon or Kyle Carpenter. Duke Dep. 33:18-23.

Horizon had a very regimented safety program. Graves Dep. 40:17-21. Horizon held weekly safety managers' meetings and weekly "all-hands" safety meetings. Dep. Graves 49:13-23, Pl. Ex. 33. Horizon used a site passport system to enforce safety rules. Hubble Dep. 158:1-13, Pl. Ex 12, 28; Dennison Dep. 33: 15-25. All persons on site underwent safety orientation and received a site passport outlining basic site rules. *Id.* If an individual would be driving on site, that person would also receive a separate driving card. *Id.* Horizon could revoke the site passport. *Id.* The speed limit on the project was 20 m.p.h. Pl. Ex. 28.

Each contractor on Rattlesnake Road was required to hire a safety manager. Pl. Ex. 27. Carl Hubble was Horizon's safety manager.[5] Dennison Dep. 11:1-14. Tom Graves was FMK's safety manager. Graves Dep. 4212-15. The safety managers for the contractors were required to report any incidents, including any recordable injuries or lost time accidents. Hubble Dep. 78:5-14.

Duke had worked as a foreman for FMK in 2007 on the Elkhorn Wind Farm Project ("Elkhorn"), a project owned by another Horizon subsidiary. Duke Dep. 34:7-25, Duke Dep.

---

enforce the testing policies ... and Contractor shall remove any employee or other indvidual Owner deems incompetent, careless, negligent, unreasonable, uncooperative, unfit, under the influence or in possession of drugs or alcohol, or otherwise reasonably objectionable and, in such event, any replacement personnel shall be subject to the prior written approval of Owner, which approval shall not be unreasonably withheld." Def. FMK Ex. 1, p. 3.

[5] Hubble was the safety manger for FMK at Elkhorn prior to becoming the safety manager for Horizon on Rattlesnake Road. Graves Dep. 47:5-23.

20:9-12, 59:7-24. While driving at Elkhorn, Duke's driving privileges were revoked for speeding. Duke Dep. 46:10-49:1, 57:8-58:2, 59:7-60:6.   At Elkhorn, Duke remained employed with FMK although his driving privileges were revoked.  Duke Dep. 57:24-58:2, 59:12-60:5.  Prior to receiving a site passport at Rattlesnake Road in April 2008, Duke was given a warning about his driving.  Duke Dep. 61:20-62:4, 63:22-65:13.  Regarding his driving, Duke was told he "wouldn't get any breaks."  Duke Dep. 61:21-62:4. 64:12-20

On May 19, 2008, Duke  and co-workers attempted to remove pins from the bucket of an excavator.  Duke Dep. 130:17-132:24.  On May 20, 2008, Duke complained of shoulder pain he attributed to events the preceding day. *Id.*  Duke filed a worker's compensation claim for his injury.  Pl. Ex. 14.[6]  That afternoon, Graves took Duke to the hospital and then a pharmacy to fill a prescription for pain medication before dropping Duke off at home.  Duke Dep. 143:11-144:1, 147:13-148, Graves Dep. 150:5-151:15, 157:1-4.  According to Grave's deposition, the doctor released Duke back to work.  Graves Dep. 150:8-10, 151:16-25.  Duke testified he intended to return to work the next day.  Duke Dep. 147:18-19.

On May 21, 2008, Duke took the prescription pain medication. Duke Dep. 147:20-22. Driving was not advised while using the medication.  Duke Dep. 147: 23-24, Graves Dep. 151:1-15. Duke did not report to work that day.  Graves Dep. 164:3-8.  Graves went to Duke's apartment.[7]  *Id.*  Duke went to the work-site after Grave's visit. Duke Dep. 150:5-8.

---

[6] Duke testified that Graves sent him to the clinic in Arlington for the injury.  At the clinic, Duke was asked if the injury occurred at work.  Duke affirmed.  Duke was sent back to the work site.  Tom Graves then drove Duke to Good Shepherd Hospital.  Duke Dep. 140: 3-141:21.

[7] The parties dispute whether Graves told Duke to report to work to avoid a lost-time incident or Duke reported to work voluntarily.  Dep. Graves 170:4-171:12, Duke Dep. 149:1-150:11.

When Duke returned to the work site on May 22, 2008, he stayed at FMK's trailer, did not drive and had, in his words, "no job duties." Duke Dep. 152:7-17. Duke and Graves discussed whether the injury would be covered by Duke's private insurer or Worker's Compensation. Dep. Graves 172:17-173:7.

Graves investigated Duke's report of injury. Pl. Ex. 16, 17. Grave's report states that Duke's shoulder injury did not take place on the job.[8] Pl. Ex. 17. Graves testified that he believed the claim was fraudulent. Graves Dep. 194:2-11. FMK did not report the injury during the statutory five day period. Pl. Ex. 14, p. 2. FMK's workers' compensation carrier ultimately accepted Duke's claim. *Id.*

On June 2, 2008, Charles Kempf, an employee of Crestline, another contractor at Rattlesnake Road, witnessed Duke drive out of the boundaries of Rattlesnake Road on E-line and into a wheat field. Pl. Ex. 1.[9] Kempf reported that Duke drove past Kempf into the open field. After Kempf waived his arms to stop Duke, Duke turned around and returned to Kempf. *Id.* A brief exchange followed. Pl. Ex. 1, Duke Dep. 87:4-88:14. Duke testified that he did not know he had gone off the end of E-line until he returned to Kempf. Duke Dep. 78:1-10.

On June 3, 2008, Horizon informed FMK that Duke's driving privileges had been revoked for breaking site safety rules. Graves Dep. 229:14-231:8, Pl Ex. 22. Thereafter, FMK terminated Duke's employment. *Id.* Duke was told he was terminated because there were no jobs for him

---

[8] Duke disputes the conclusion of Grave's report.

[9] According to Duke and Def. Horizon's Response to Interrogatories, No. 18 & 19, the wheat field would eventually be developed as a wind farm ("Wheatfield Project"). Duke Dep. 248:11-20. At the time of the incident, it was a field. The witnesses dispute whether it was stubble or freshly planted.

that did not require driving.  Duke Dep. 123: 20-124:4.

    B.  FACTS IN DISPUTE.

    Facts in dispute primarily relate to (1) the circumstances of Duke's injury; (2)

communications between Horizon and FMK about Duke; (3) incentives related to lost-time

reports;(4) process of revocation of Duke's driving privileges; and (5) accounts of Duke's driving

onto the Wheatfield Project.

Standard of review

    Summary judgment is appropriate if there is no genuine issue as to any material fact and the

moving party is entitled to a judgment as a matter of law. Fed R. Civ. P. 56(c). All material facts

are resolved in light most favorable of nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317,

331 (1986). The moving party bears the initial burden of showing no genuine dispute of material

fact exists. *Id.* at 323.  A scintilla of evidence or evidence that is merely colorable or not

significantly probative, does not present a genuine issue of material fact.  *United Steelworkers of*

*America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989).  Whether the evidence is such

that a reasonable jury could return a verdict for the nonmoving party determines the authenticity

of a dispute.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Discussion

**A.  First Claim, Count One: Application of ORS 659A.040 to FMK**

    This is a diversity action brought under Oregon law.  It is an unlawful employment practice

for an employer to discriminate against a worker because he has applied for workers'

compensation benefits.  ORS 659A.040.  Duke alleges his use of the workers' compensation

system was the catalyst that resulted in termination of his employment in violation of his rights

Page 6 - OPINION AND ORDER

under ORS 659A.040.

To establish a prima facie case under ORS 659A.040, plaintiff must show that he (1) invoked the workers' compensation system; (2) was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he invoked the workers' compensation system. *Kirkland v. Western Hyway Oil Co.*, 204 Or.App. 287, 293 (2006) (citing *Hardie v. Legacy Health System*, 167 Or.App. 425, 433, 6 P3d 531, 537 (2000)).

This court applies the burden shifting analysis of *McDonnell Douglas* for claims brought under ORS 659A. *Snead v. Metropolitan Property & Casualty Insurance*, 237 F.3d 1080, 1090-94 (9th Cir. 2001). Pursuant to *McDonnell Douglas,* plaintiff has the initial burden to establish a prima facie case of discrimination. To establish a prima facie case, plaintiff must present sufficient admissible evidence to raise an inference that misconduct occurred, but need not prove actual discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Once plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant is successful, then the burden returns to the plaintiff to show by a preponderance of the evidence that the alleged legitimate, nondiscriminatory reason for the employment action is merely a pretext for discrimination. *Id; See also Kotelnikov v. Portland Habilitation Center*, 545 F. Supp.2d 1137, 1139 (D. Or. 2008).

In order to establish the causal link of the prima facie case, Duke must show that his worker's compensation claim was a "substantial factor," or "a factor that made a difference," in FMK's decision to terminate him. *Lewis v. Wal-Mart Stores, Inc.,* 2009 WL 3462056 at *9 (D. Or).

Proof needed to defeat summary judgment at the prima facie level is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.*

Duke establishes a prima facie case of discrimination.  The record is clear that Duke filed a worker's compensation claim on May 21, 2008.  The claim was not accepted by FMK's workers' compensation carrier until after Duke's termination on June 3, 2008.  Pl. Ex. 14, p. 2-4.  The mere fact that plaintiff filed a claim for a work injury, and a negative employment act occurred, does not in itself create a genuine factual issue of discrimination.  *Hardie v. Legacy Health System,* 167 Or.App. 425, 433, 6 P3d 531, 537 (2000); *Coszalter v. City of Salem,* 320 F.3d 968, 978 (9th Cir. 2003) (timing alone does not support inference of discrimination; additional evidence of surrounding circumstances must support such an inference.)

Here, questions of fact remain regarding why plaintiff's claim languished.  Based on the timing of the delay in filing the claim and disputed testimony of Duke and Graves, a genuine issue of material fact exists regarding the causal relationship between filing the injured worker claim and termination.  *See Scott v. Sears, Roebuck and Co.* 395 F.Supp.2d 961, 981 (9th Cir. 2005).

Moreover, facts in dispute regarding Graves' investigation of the injury, testimony about an alleged conversation between Graves and Hubble regarding the injury, and inconsistencies in testimony about whether Duke was directed to file the claim on his private insurance also lead the court to conclude that issues of fact exist regarding the causal relationship between the report of injury and Duke's termination.  "Causation sufficient to establish the third element of the prima facie case may be inferred from the circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the

protected action and the allegedly retaliatory employment decision." *Dickison v. Wal-Mart Stores, Inc.*, 2007 WL 1959287, *3, citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), *cert denied* 498 U.S. 939 (1990).

The burden then shifts to FMK to articulate a legitimate, nondiscriminatory reason for the adverse employment action. This is merely a burden of production, not a burden of persuasion. *Lewis v. Wal Mart Stores, Inc.,* at *12 (citations omitted). FMK satisfies that burden by alleging that Duke violated safety rules on Rattlesnake Road and was terminated because his driving privileges were revoked by Horizon.

The burden shifts back to the plaintiff to show by a preponderance of the evidence that the alleged legitimate, nondiscriminatory reason for the employment action is merely a pretext for discrimination. Duke contends that revocation of his driving privileges after his claim for workers' compensation provides the pretext for his termination.

FMK argues that Duke relies on vague, unreliable suppositions to support his claim that the revocation of his site passport was pretext. In demonstrating pretext, an employee may accomplish the result "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Arnoth v. DHL Express (U.S.A.), Inc.* 2010 WL 724129 at*7 (D. Or.), citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981) . The plaintiff in a discrimination case may survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reason. *Dickison* at *3. The evidence of pretext must be "specific" and "substantial" in order to create a triable issue with

respect to an employer's discriminatory intent. *Lewis* at *12.

Oregon courts have held that conflicts between plaintiff's and defendant's evidence in a workers' compensation retaliation case can preclude summary judgment.  In an employment discrimination case, "if a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons," summary judgment for the moving party is inappropriate. *Dickison v. Wal-Mart Stores, Inc.,* 2007 WL 1959287 at *2, citing *Wallis v. J.R. Simplot,* 26 F.3d 885, 889 (9th Cir. 1994).

Here the record is replete with controverted testimony suitable to submit to an objectively reasonable juror.  Given these facts and the standard set forth above, I find Duke sustains his burden.  FMK's motion for summary judgment as to Count One is denied.

### B.  First Claim, Count One: Application of ORS 659A.040 to Horizon

Horizon argues that Duke's claim for injured worker discrimination under ORS 659A.040 does not apply to Horizon because neither Horizon nor Arlington was Duke's employer.

The statutory definition of "employer" for purposes of Oregon's unlawful discrimination laws "means any person who ... directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed."  ORS 659A.0001(4).

Four factors are relevant to determine whether a putative employer has the right to control an individual: (1) any direct evidence of the right to, or the exercise of, control, (2) the method of payment, (3) the furnishing of equipment, and (4) the right to terminate. *Cantua v. Creager,* 169 Or App 81, 92, 7 P.3d 693, 700 (2000).  Here, control is the only factor in dispute.

Duke concedes that FMK was his employer in the "classic sense," but Duke alleges Horizon

Page 10 - OPINION AND ORDER

could effectuate termination of a contractor's employee by revoking their site passport and by exercising rights under the contract.[10]   Duke argues that Horizon's ability to remove or replace individuals on site effectuated his termination and is thus direct evidence of control.   Duke argues that Horizon exercised this control in a discriminatory manner.

The test of right to control does not refer to the right to control the results of the work but rather to the right to control the manner and means of accomplishing the result. *Id.*   Horizon argues that the site passport did not detail how Duke was to perform his work, set work hours, the place of work or outline what equipment Duke used to perform the work.   On a daily basis Duke was informed by FMK what specific tasks were to be completed and he reported every afternoon to FMK.   Duke Dep. 33:18-23.   In short, the record shows FMK was in charge of Duke's daily activities.

The record is clear that Duke was paid by FMK, drove FMK's equipment and was terminated by FMK.   Decl. Bush.   Duke testified that FMK, not Horizon, was his employer.   Duke Dep. 46:12-25. Duke testified that Carl Hubble had informed Duke to slow down while on Elkhorn, but otherwise did not evaluate or discipline Duke.[11]   Duke Dep. 48:46:10-49:2.   Duke concedes that he would not have told Hubble about an on-site injury.   Duke Dep. 176:9-19.   Hubble testified that he would tell the contractor of site rule violations and relied on the contractor to carry out whatever discipline was appropriate.   Hubble Dep. 157:7-25.   Bill Dennison testified that he did not fire Duke because he did not have the authority to do so.   Dennison Dep. 33:15-

---

[10] see footnote 3 above.

[11] It is unclear from Duke's testimony if he was referring to when Hubble was FMK or Horizon's safety manager in the context of supervision.

16.

 Horizon refers to the contract with FMK to demonstrate that no agency relationship  was

created.[12]  Horizon cites *Vaughn v. First Transit, Inc.,* 346 Or. 128, 136, 206 P.3d 181 (2009) for

the proposition that a principal (Horizon) does not have the right to control the daily work

activities of the employee of a contractor (FMK) and that an employee of the contractor is not

necessarily an employee of the principal.   Duke contends that "the right to exclude an individual

from an employment opportunity carries more weight in an equal employment context than it

does in a tort liability context" and argues that the analysis of *Vaughn* should not control.  Pl.

Response to Mot. Sum. Judgmt, p. 12.  The holding of *Vaughn* relates to right to control and

agency principles in a tort case involving vicarious liability.[13]  Plaintiff does not provide authority

for a different standard for employment opportunity.[14]

 Duke concludes the holding in *Vaughn* "does not give the operator of a job site a free hand to

exclude employees of contractors based on race, sex, religion, national origin, disability or any

---

[12] "Foundation Balance of Plant Procurement and Construction Contract, 22.10: <u>No partnership created</u>.  Contractor is an independent contractor and not Owner's agent or employee. Nothing contained in this Contract shall be construed as constituting a joint venture or partnership between Contractor and Owner or any other Person or otherwise authorize any party to represent or bind the other Party."  Def. Horizon Ex. 1, p. 4.

[13] An agent is an employee if that principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also control how the employee performs the work.  In contrast, when the agent retains control over the details of the manner in which it performs its duties, that agent is a nonemployee agent.  Restatement (Second) of Agency at § 220 comment e, *Vaughn v. First Transit, Inc.,* 346 Or. 128, 136, 206 P.3d 181, 186-87 (2009).

[14] In *Woody v. Waibel,* 276 Or. 189, 192-193, 554 P.2d 492, *,  (1976), the court found for purposes of determining <u>coverage</u> in worker's compensation cases, the 'nature of work' test rather than the 'right to control' test was appropriate.

Page 12 - OPINION AND ORDER

other legally protected status such as utilizing the workers' compensation system." Pl. Response to Mot. for Sum. Judgmt., p. 12-13.  The contract reads that Horizon's exercise of approval or disapproval of personnel "shall not be unreasonably withheld." Def. Horizon Ex. 1, p. 3.  No exclusion based on protected status is provided in the contract which may indeed render the provision unenforceable.

While Duke points to some evidence of Horizon's control over all workers on the site, such as holding safety meetings, requiring safety training, and reserving the right to exclude workers from its premises, these functions are consistent with its role as the owner of the premises as they are with an alleged employer-employee relationship between Duke and Horizon.  *See Conn v. United States Steel Corporation*, 2010 WL 1382338 at *3 (N.D. Ind.)[15] (employee of independent contractor who worked on blast furnace was not not a direct employee of defendant though some evidence of control was demonstrated.  Defendant reserved the right to remove contractors' employees from the plant for any reason it deemed appropriate.)

The most significant control Horizon exerted over Duke was its decision to revoke his driving passport.  However, this action is consistent with its position as owner of the premises.  Further, the contract between FMK and Horizon specifically reserved Horizon's right to remove or replace contractors' employees for reasons it deemed appropriate.  Def. Horizon Ex. 1, p. 3.  For these reasons, Horizon's motion for summary judgement on plaintiff's First Claim, Count One is granted.

## C.  *First Claim, Count Two: Application of ORS 659A.030(1)(g) to FMK*

Duke's Amended Complaint alleges that <u>all</u> defendants are in violation of ORS

---

[15] Although not controlling authority, the rationale is persuasive.

659A.030(1)(g) which provides: "(1) it is an unlawful employment practice : *** (g) for any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden by this chapter or to attempt to do so."   FMK argues this claim is directed toward Horizon and not FMK.   Answer & Affirmative Defenses, p. 3.   Duke does not name third-party employers of FMK or elaborate on the claim.   Based on both parties' treatment of the application of the statute only to Horizon, FMK's motion for summary judgment on Claim One, Count Two is granted.

### D.  First Claim, Count Two: Application of ORS 659A.030(1)(g) to Horizon

Here, Duke argues that defendants acted in concert with one another and gave substantial assistance to one another for the purposes of firing Duke.   As outlined above, ORS 659A.030(1)(g) provides: "(1) it is an unlawful employment practice : *** (g) for any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden by this chapter or to attempt to do so."

Horizon argues that the term "any person" regulates the conduct of those working for the plaintiff's own employer.   The parties do not cite nor does the court find case law in Oregon defining the meaning of aiding or abetting employment discrimination under the statute. Federal district courts follow the state rules of statutory construction when interpreting state statutes. *Powell's Books Inc. v. Myers,* 599 F.Supp. 2d, 1226, 1237-1238 (D. Or. 2008).   Oregon's focus on text, context, and legislative history requires the court to look broadly at both the text and context of a statute to determine the legislature's intent.  *Id.* at 1238.   This court's task is to discern the intent of the legislature under Oregon rules of statutory construction.  *Portland Gen. Elec. v. Bureau of Labor & Indus.* 317 Or 606, 610, 850 P2d 1143 (1993).  *See also* ORS

Page 14 - OPINION AND ORDER

174.020(1)(a) (In the construction of a statute, a court shall pursue the intention of the legislature if possible.)

Duke suggests that the text of ORS 659.030(1)(g) is ambiguous because it is inclusive as to third parties ("any person") rather than restrictive as to third parties ("whether an employer or employee"). Duke contends this ambiguity can be resolved by looking back in time to when the statute referred to "any person, whether an employer or an employee, *or not.*" Oregon Laws 1949, Chapter 221, Section 5, Subsection 5 (emphasis added). Duke argues that the legislature's intent was to prohibit *any* person from aiding or abetting as unlawful employment practice.

Horizon's position is that the statute was intended only to regulate the conduct of those working for the plaintiff's own employer. Horizon's analysis of the plain language and interpretation of ORS 659A.030(1)(g) is sound. The protections certainly relate to the workforce. The phrase "any person, whether an employer or an employee" distinguishes subsection (1)(g) from ORS 659A.030(1)(a) and (1)(b), which apply only to employers. Subsection (1)(g) subjects individuals (co-workers, supervisors) who aid and abet plaintiff's employer to liability. As noted above, Horizon is not Duke's employer. *See Reyna v. City of Portland,* 2005 WL 708344 at *7 (D. Or.) (Plaintiff's claims under ORS 659A may be brought only against her employer. Because defendant was not plaintiff's employer for purposes of the state law claims, summary judgment on all of plaintiff's state law claims were granted). Horizon's motion for summary judgment on ORS659.A030(1)(g), First Claim, Count Two is granted.

### E.  Second Claim, Count One: Interference with Employment Relationship against Horizon

Duke brings a state law tort claim of interference with employment relationship against

Horizon.[16]  The elements of the state law tort are:

    (1) existence of a professional or business relationship;
    (2) intentional interference with that relationship or advantage;
    (3) by a third party;
    (4) accomplished through improper means or for an improper purpose
    (5) a casual effect between the interference and the harm to the relationship or prospective
advantage; and
    (6) damages to the plaintif resulting from that interference. *Maniates v. Lake County Oregon*,
2009 WL 395159 at*2 (D. Or), citing *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841
(1995).

In order to prevail, Duke must demonstrate a genuine issue of material fact on each of the six

elements of the tort. *McGanty v. Stadenraus,* 321 Or. 532, *, 901 P.2d 841, 846 (Or. 1995).  Here,

Duke and FMK had a business relationship, Duke argues harm due to the alleged intentional

interference by Horizon by improper means that caused damages.  At issue here is whether

Horizon's actions are accomplished through improper means or for an improper purpose.

To prevail at the summary judgment stage, Duke has the burden of production, not persuasion.

That is, Duke need not establish that Horizon was solely motivated to serve itself by causing

Duke's termination; rather, Duke need only produce evidence from which a reasonable juror could

so find. *Kaelon v. USF Reddaway, Inc.* 180 Or. App 89, 100, 42 P.3d, 344, 349 (2002).

Here, Duke raises allegations of improper purpose that an objectively reasonable juror

could conclude were wrongful, i.e. retaliation for filing a workers' compensation claim even

though Horizon is not the employer.  Evidence that Horizon did not follow its own procedure for

revoking Duke's driving privileges further convince the court that summary judgment is

---

    [16] The court views this claim as an alternative to Duke's claim against Horizon for
violation of ORS 659A.040.  If Horizon were Duke's employer, Horizon could not be liable for
interference with its own employment contract.

Page 16 - OPINION AND ORDER

improper.[17]

The parties history (Duke's revocation of driving privileges on Elkhorn) and testimony in dispute:  i.e. Lisa Brooks' testimony that she overheard Graves taking to Hubble for "help" with Duke, allegations that Hubble or Dennison knew of Duke's worker's compensation claim before his site passport was revoked, allegations that Horizon had an incentive not to report Duke's alleged injury, allegations that Duke's driving was reckless, allegations that revoking Duke's passport was a motive to avoid a recordable incident or loss time claim, lead the court to conclude that considerable fact issues remain.   Horizon's motion for summary judgment on this Claim is denied.

_____

[17] "Investigation and Disciplinary Procedures: Non-Compliance with Health & Safety Requirements
5.2.1  The relevant Supervisor and/or Safety supervisor will conduct a preliminary investigation of any incident, including a request to replace damaged equipment, a near miss or an accident.
If the investigation raises issues of miss-use or carelessness on the part of the employee, an in-depth investigation will take place to determine exact deatils covering such items as how the incident/damage occurred, time and date, witnesses etc.
The result should clearly identify the cause of the incident and either determinates blame or clear the parties involved.
If it is determined that the employee is at fault, they will be advised and referred for further action.
A report of the findings will be submitted to the Site Manager, Project Manager, Office Manager and the Safety Advisor.  The report will contain details of the incident, resultant damage, employee and his past record together with appropriate recommendations.
All parties will consider the report and a suitable level of disciplin agreed, ranging from a verbal or written warning through suspension (with or without pay) to formal dismissal.
When a decision is reached, the result will be communicated to the individual in writing and/or through personal interview.
A copy of the decision will be placed in the Company files at the head offices of both AWPP and your employer." Exhibit E Construction Site Safety Passport.

CONCLUSION

Defendant FMK's motion for summary judgment (Docket #58) is granted, in part, and denied, in part.  Defendant Horizon and Arlington's motion for summary judgment (Docket #66) is granted, in part, and denied, in part.

DATED this 9th day of September, 2010.

s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

Page 18 - OPINION AND ORDER